20-1667 from the Eastern District of Arkansas, United States v. Abdulla Daifullah Before we begin, I was instructed to tell the court to also pin Mr. Eric Heisey. Unfortunately, we have 35 people out with COVID, so there's three of us juggling several hearings today. So we're splitting up the argument, and he's going to do the rebuttal. It's under Eric Heisey. Was he on the briefs? I have to reach for them. He was admitted, Your Honor, at last minute due to the COVID situation. All right, so he's admitted, and he's familiar with the case, and I have to find him. He's the guy down there. All right. All right, I've got everybody pinned. Judge Graz, Judge Kobus, have you sent? Yes. Good to go, Judge Wilkins. All right, Ms. Goldberg, you have the floor. Thank you, Your Honor. If it pleases the court, I believe that the lack of jurisdiction by the district court was fully briefed, and therefore I would like to address two key issues as to why this case should be remanded back to the district court for further proceedings. Number one, as a matter of law, Mr. Daifullah was eligible for the visa he received in 2006, and the lower court misapplied Section 1182 materiality and the Harani case when it found Mr. Daifullah was immiscible when he received the visa in 2006. Number two, the grant of summary judgment without a hearing was premature without allowing Mr. Daifullah to present evidence regarding disputed facts as to whether he was lawfully admitted. He was also not allowed an opportunity to cross-examine Linda Carter, subpoena EOIR court transcript, testimony of preparers, medical evidence, or experts. So, putting aside, although this is a key issue, the fact that Mr. Daifullah is illiterate, which is clear from the deposition, he did not even know how to spell the city he lived in for over eight years at Appendix 117, Lines 2 and 3. He did not understand the exhibit they were giving him to read, even when it was upside down, he thought it was correct. See Appendix A, 145, Lines 3 through 8. And he, obviously, there was the N-648 waiver, which talked about not only his illiteracy and his past abuse, but the onset of dementia. If this court, so there's a few issues that the lower court focused on in finding him to say that he was not admissible when he originally came to the court, and I believe that that was an error, which gets to the basis of the Harani case. If the court, first of all, the one was that he sought asylum, to procure asylum through fraud, and that's just not the case. If the court turns to Appendix A, 85, the asylum application, the very, very first interview where this man walks in and finally gets to testify, he has an application that's prepared by preparers, he can't read it, he doesn't understand it, and it goes. And the reason USCIS has an interview is specifically for this purpose. So the officer reads him what's in the application, and the very first officer writes, applicant said he did not understand what this letter said, and this information is incorrect. None is true. Now, had he continued this lie, there's a good chance he might have gotten asylum, but he didn't. From the very onset of this man being questioned, he said, look, this isn't true, this isn't accurate, this is actually my problem. The government then goes on to presume that he reapplied in removal proceedings, and that's just not the way the law works. Once an asylum application is not found sufficient, and it was not found sufficient because of his credible testimony, it is automatically transferred to the removal proceedings court for review. And that issue never came up. There were several master hearings which are check-in, what are we going to do with this case, what are we going to do with this case? It never came to be. And so the whole case was transferred over pursuant to the law, it's automatic, he doesn't reapply. And what does he do? He tells the judge the same thing he told the officer, and then says, okay, I'm withdrawing my asylum, and then the judge grants voluntary departure. The government would have you believe that he lost the case and therefore got voluntary departure. That's not the way it works, because you can't qualify for voluntary departure while having an asylum application pending, because the asylum application in of itself says, hey, I'm afraid to go back home. So that's just not the way the facts lay down. So therefore, you do not have that he misrepresented to obtain a benefit. And even to the extent that he signed something that he couldn't read and maybe shouldn't have, at a minimum, you have a timely retraction, which is not misrepresentation. Counsel, this is Judge Grimes, let me ask you about that. It's my understanding from the record that even if he did retract some of the false statements or misrepresentations, that he never retracted all of them. If you look at the letter, which the asylum application says, see letter, see this. If you look at the letter, the letter specifically says none true. And if you look at the line on the side of the letter, he's highlighted the entire thing. What he said, what he didn't retract is that he was being abused, which there's several. And this gets also to the fact why the summary judgment was premature, because there's lots of evidence to show that as a child, he was abused by his stepmom and by his stepmom's family, who were quite powerful, both in Yemen and in the community in the United States. So I would respectfully disagree that he didn't fully retract that when you look at that letter, which is the substance and essence of the entire asylum application, because that's what lays out his claim, it says none is true. The second thing, did that answer your question, Your Honor? Yes, thank you. Okay, the second thing that I want to turn to is the idea that misrepresenting a name and a date of birth could be material. And this is where the Harani case is completely misapplied. Because if you look at Harani, Harani was ordered deported. It wasn't necessarily that he failed to give an additional name. It was that that additional name would lead to a proof that he was deported. Our client was never deported. He was granted voluntary departure. He timely left the country, which means that inadmissibility didn't exist, unlike Harani. Harani was barred for 10 years. And so by not listing his previous name, it also concealed the deportation. You don't have that here. What you have is a man that was placed in removal proceedings. He was granted voluntary departure, not deported, which not only waives any bar, it also waives the bar of unlawful physical presence. And this is basically akin to, let's just say, I'm arrested. Now, if I'm arrested and I'm convicted and I lie on my N-400, that's material. But if I'm arrested and the charges are dismissed, that is not material. And that's what we have here. He was placed in removal proceedings. Basically, the removal proceedings, virtue of the voluntary departure, were dismissed and all bars were waived. So when you... Counselors, Judge Loken, I'm a little slow catching up here. I'm still back on the asylum application. If he had not only, after the letter was, this is all untrue, if he had withdrawn the asylum application at that point, would it have taken six years before he had to voluntarily depart? So, even if he can't at that point, it automatically is referred to the court. And if I... Wait a minute. I mean, if he withdraws his application the day after that interview in 1991, would it have taken six years to get him into, before the immigration court, where he's granted voluntary departure? It would have taken the same amount of time to go through the court system. He couldn't have... Once you filed an asylum application, it is automatic referral to the removal proceedings court. And remember, at that point... Yes, because there has to be a hearing. But if he withdraws the application, it goes through a much simpler process. Not necessarily. He still goes to the master hearing. And at that point, also, remember, his asylum claim, which was genuine, and this again gets back to the fact that the summary judgment was premature, in his mind was based on childhood abuse, abuse from the stepmom. Now, whether that qualified for asylum is one thing, but whether it was done in bad faith is a completely another thing. And that's the story he was telling all the way through is, look, I've been abused since I was a child. My stepmother's family is powerful in Yemen. They're powerful in the Yemen community here in Detroit. And I'm afraid. And that's all he said from the very beginning. And the fact that this was granted on summary judgment before evidence of that could be presented to the court is exactly why this should be remanded back. And so if you look at going back, one other thing is that if you present that evidence of asylum and you demonstrate that he didn't willfully misrepresent anything, you lose that inadmissibility. Additionally, as to, and I had to save this five minutes, but I want to touch on the idea that someone's name and date of birth could be willful misrepresentation. And that is just not the case. There's lots of cases. In fact, many immigrants change their name when coming to the United States, including judges sitting on the circuit courts around the United States. Circuit court judge wisely just noted two months ago that his father changed his name and that many people coming through Ellis Island changed their names. And that's Elzukri V. Pompeo. But counsel, stating the wrong name on the visa application made his lies about no prior attempts to, you know, the other lies less likely to be uncovered. In what case, your Honor? Because if he had used the same name that he used in the initial asylum application in the visa application, then they would have quickly seen that his answers of no to those other questions were false. And he still would have gotten a visa. And why would he have gotten a visa? He would have gotten a visa because using an additional name is not an inadmissibility. He was granted voluntary departure, so he does not have a deportation bar. And because he was granted... In essence, if there was any willful intent, which we don't believe we did, which needs to be presented, even if it was willful, it's not material because he would have been given the visa anyways. Yes, but he gets a visa under a false name and then he can't apply for citizenship as the son of his citizen father. That's not the law. Without more lies. So that's not the law. And if we look at... For example, if we look at the Safe at Home program, the Safe at Home program protects abused children by changing their names. There are several organizations. Changing one's name is not in and of itself bad moral character, nor does it go to admissibility. The only inadmissibility issues is if he sought benefit by misrepresentation, or if he was deported or if in fact he had triggered the unlawful presence bar. But whether he tells the truth on this application or whether it's withheld because someone else figured it out, under either scenario, this man gets a visa. And I'm going to reserve the last bit of time for rebuttal. Very good. Mr. Bianco? Thank you, Your Honor. Can everyone hear me okay? Yes. May it please the court? Before I start with the argument on merits, I'd like to briefly touch upon Mr. Daifula's argument regarding jurisdiction in this case. Now, this has been briefed. I just want to touch upon that the section relevant here... Before you touch upon it, let me say I read the post case, not expecting to find much since it's so old, that's cited in a Posting Council's brief. And I have to tell you, I think Post is controlling. Particularly combined with the Supreme Court's recent interest in things like whether the government is, you know, properly selecting ALJs in various agencies. Your Honor, I think... The way Post defines instituting, as meaning indictment information or signing a complaint. It seems to me that makes the Ninth Circuit's brushing aside as just poor practice the fact that the U.S. Attorney in that case brought in OIL with a letter instead of signing a complaint. I think that's wrong. Your Honor, I think that in this particular case, institute proceedings means it's referring to the decisional authority of whether to file a suit, which the statute vests with the U.S. Attorney as a person making a decision on behalf of the United States as a party. I think file in this manner means the actual placing of the suit on the court's docket. I think these are not the same things... That's not what the Supreme Court said, and it's never retracted it. Well, Your Honor... They're our controlling authority. Your Honor, I think... How do you distinguish Post? Well, because Your Honor... Other than by the fact that the Department of Justice hasn't bothered to comply with it in the 150 years since Post. I think, Your Honor, I think what that... The problem with that argument, I think, is that at least the understanding that in order to file a suit, that the actual party would have to put his name on a signature block on a complaint. And I think that that is a result of that understanding that I think is not what Congress had intended. Counsel, this is Judge Krause. Let me ask you a question about that. Are we talking about whether the requirement of U.S. Attorney instituting the proceedings, whether that's mandatory or whether it's jurisdictional? I think it's procedural, Your Honor. I don't think it's... I think it's a very compelling argument that it's mandatory, but I don't see how it's jurisdictional. The trouble is Post says it's jurisdictional, explicitly. Your Honor... And, of course, jurisdiction is a moving target in terms of what it means. And the Supreme Court today might not have used that word, but they used it. Well, Your Honor, I'm looking at the language that's here in the statute. I think there's a comparative section in the Immigration and Nationality Act that I think highlights the point that had Congress intended this to be a jurisdictional matter and not a procedural or authoritative matter that the U.S. Attorneys institute proceedings, they would have said so. Section 1503 of the Immigration and Nationality Act makes that point. There it says an individual who's denied the rights or privileges of citizenship may institute an action, quote, for a declaration of citizenship. And then it follows with the provision that such action shall be filed in the District Court of the United States for the district in which the individual resides. And that's in a follow-on section in the INA. So, clearly, Congress distinguished the idea of instituting a suit versus the individuals actually to file that suit. And I think that distinction is relevant and important here. Congress knows how to describe two distinct actions when necessary, deciding whether to bring a suit and actually filing that suit with the court. And, again, that distinction is one of the role of a party in a suit and the role of a council representing the party. Here, I think when Congress used the word institute proceedings, it's authorizing the U.S. Attorney as the party, in this case representing the United States as the party. The U.S. Attorney's role, like any other party, is then to decide whether to bring an action. To argue otherwise would require the party in a litigation to not only make the decision to bring suit, but also to sign and file his own pleadings, which, again, I don't think is what the statute has intended. It's not clearly indicated by the statute. Council is just not aware, in a relevant statute, of a requirement for a party to sign and file a complaint, to personally file it, or to separately note on the docket that they have authorized the filing of a suit, simply because the authorizing statute directs who may institute the proceedings. Indeed, the Ninth Circuit, who has discussed this matter, which is the only other case, or circuit court, that counsel has... It didn't discuss it. It said that there was poor practice, and then it just said, but it didn't affect the government's burden of proof, so we affirm. That was not a discussion of the issue in the slightest. I understand, Your Honor, that the court noted that it was poor practice, but I think the controlling issue here is whether this is an actual jurisdictional requirement, Your Honor, and we don't believe it is. And because of that, because it wasn't raised at the district court, we believe that it was waived. Turning to the merits of the case, Your Honor, representations here by Mr. DiFullo were in fact willful, and the appellant has not raised genuine issues of material fact to disturb that district court's decision. The requirement here of willfulness is that Mr. DiFullo made misrepresentations at three distinct points. He illegally procured his naturalization because he was inadmissible. At the time, he was granted permanent residence for misrepresenting facts on his asylum application, his visa application, and then thirdly, he procured his naturalization by willful misrepresentation of material facts. Any one of those is sufficient to support the district court's decision to revoke Mr. DiFullo's citizenship, and all three are established here. There is not a requirement of an intent to deceive. I think these issues here that Mr. DiFullo is raising goes to a question of intent. That's just simply not the standard here. This court has laid it out. The Ninth Circuit has done so as well. It's sufficient solely that Mr. DiFullo had knowledge of the falsity of his representations, and there's no genuine issue that that exists here. He responded none on his applications when asked about his previous identities. He's admitted to that. He admitted that he used an identity previously to applying to naturalize. He's admitted that he knew and he admitted that it was not his true identity and that his claims for asylum were also not genuine or true. Mr. DiFullo knew of those responses. It's confirmed by his signature on the applications. He signed his naturalization twice under penalty of perjury, specifically stating that he knew the contents of that application for naturalization were true and correct. Similarly, he signed his visa application for a consular officer, similarly attesting that the representations on the document were made by him and that he knew that those were true and correct. His claims, again, through some combination of a lack of literacy, a lack of knowledge of English language or inability to read or mental impairment, they don't change or create a genuine issue of fact here. His affirmations, again, were under penalty of perjury, that he knew the contents of those applications. He waived, I'm sorry, his waiver on his naturalization application was not an honesty waiver. They waived simply his requirement of an understanding of the English language and the civics requirement. As the district court stated, that's not a waiver of honesty. Third, he was, in fact, aided by translators, completing his visa application and during his naturalization interview, he had the benefit of a translator who was present during the interview. In addition, his understanding of the Arabic language was exhibited and established in this court on the record. He read his statement that he provided to the immigration court detailing his asylum claim. It was written in Arabic. He read it at his deposition. There's no issue that he knew how to read, at least in a foreign language, as well. The issues that Ms. Goldberg raises are red herrings. As this court stated in Harani, they are not issues of genuine fact. Now, regarding the materiality of those statements, I don't understand. There's simply, this court has stated, just definitively in Harani, that misrepresentations regarding identity are definitely material. And the standard there is simply whether the individual, whether they foreclosed a, whether they foreclosed a line of inquiry. And that's exactly what we have here. They could have revealed a true immigration history. As we know, his inability or his concealment of his previous identity concealed his immigration history under that identity. And again, just the sole fact of revealing that immigration history was sufficient, as this court laid out in Harani. It was not necessary that the individual have been deported under the previous identity, as Ms. Goldberg claims. I would also like to note the idea that Mr. Dyfula claims that he withdrew his previous application. He did in fact withdraw it, but he withdrew it solely because he was facing offer of voluntary departure. Mr. Dyfula would not have withdrawn his asylum claim had he been able to make a case for asylum. He had admitted that that was a fake claim that simply didn't exist and knew that that wasn't going to be successful. So in turn, he chose to go down the path of voluntary departure. Beyond all of this, while he may have retracted his claim at that minute, at the last moment, when offered voluntary departure, it's without a doubt he did not retract the fact that he had used a different identity under that asylum application. An identity that Mr. Dyfula has admitted was not true and was not his. I want to touch upon the issue also of procurement. There, the procurement test is one that's relevant to the issue of whether he willfully misrepresented in obtaining his naturalization. There, all that's required is that there's a fair inference that the applicant was actually disqualified. We think that's met in this case. Mr. Dyfula's inability or concealment of his previous identity in fact raised the inference that he was in fact disqualified because he had raised a false asylum claim under his first identity which made him inadmissible in attempting to procure an immigration benefit by a material misrepresentation. There, again, that retraction was not in fact timely. It came only at the last minute. He filed his application with the Immigration and Naturalization Service. He submitted a signed letter to the Immigration Court, I'm sorry, to the Immigration Authorities, INS, propounding those misrepresentations. He continued that claim and notes a letter that contains a false asylum claim that he had made in his original application. While there's some notation that the letter was in fact, was not true, there's no indication that Mr. Dyfula made those notations or admitted to that. We do know that after the INS reviewed his application and the case was referred to the Immigration Court, his attorneys on his behalf submitted a letter and Mr. Dyfula withdrew it when he was first confronted with it. Just doesn't fly with the record in this case, Your Honor. It was only after he was offered voluntary departure or when he had the opportunity for voluntary departure that he withdrew that false asylum claim. And again, he would only do so and admit to and take departure if he knew that his asylum claim would not be successful. In addition throughout all of that, he never admitted to the fact that he was a fake identity that he created out of whole cloth solely to be able to enter the United States. That's something that Ms. Goldberg cannot answer. And we believe is that continues to establish the fact that that misrepresentation was material. Your Honor, I'd like to open the floor for any further questions from the court before I make my final argument. Your Honors, the government, the district court's decision that Mr. Daikula willfully misrepresented and concealed his identity and immigration history was supported by the record and that there are no genuine issues of material fact in this case that would counter that. The government respectfully requests the court uphold its decision of the district court granting that summary judgment and the judgment revoking Mr. Daikula's naturalization. Thank you. Thank you. Mr. Heise, there we are. Two and a half minutes for rebuttal. Mr. Heise. Thank you, Your Honor. So I would like to go back and touch on the idea of whether or not Section 1451 is in fact a jurisdictional statute. Section 1451, the Supreme Court's held that United States v. Zuka is the exclusive procedure for denaturalization. You have to do it under Section 1451. So 1451 in that respect is certainly jurisdict. But if you go and you actually look at the language of 1451 itself and all of its subparts, right, and the Supreme Court said when we're talking about Congress granting jurisdiction and restricting jurisdiction that you have to look at whether or not Congress has plainly shown an imbued procedural bar with jurisdictional consequences. That's the United States v. Kwai Fong Wong in the Supreme Court in 2015. So, and I think this is where Section 1451E of the statute in question is really, I think it shows exactly that this is a jurisdictional section. 1451E discusses the scenario where you see a criminal prosecution under 181425 for procuring a fraudulent naturalization. And it says in 1451E that jurisdiction is conferred on the courts having jurisdiction of the trial of such offense to make such adjudication, referring to the cancellation of a naturalization. And so the reason why this happens is because someone could be tried outside of the district where they reside, which is where 1451's proceedings have to be brought. So you can imagine a scenario where someone lives somewhere and then gets tried elsewhere. And then what Congress has done is says rather than have to have the DOJ bring a new suit, and the U.S. attorney go and file in the jurisdiction where that person lives to comply with this jurisdiction, we're going to transfer the jurisdiction that's only in the court where the defendant in this case would reside to the criminal court and allow them to cancel the naturalization. I mean it makes a lot of sense. But it also shows that when you consider the statute as a whole that this is clearly a jurisdictional statute. And so since it's a jurisdictional statute, subject matter jurisdiction can't be waived. The court has to take this before it considers anything else. And you can't even consider the merits once subject matter jurisdiction is not there for the court to consider the merits. So I would say that Post does control. Costello reaffirmed that this is a dismissal for jurisdictional purposes. And I see my time is up and I thank the court. The court thanks both counsel. The case has been well briefed and argued. It's longstanding and complex and we will take it under advisement.